UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
UTILITY METAL RESEARCH, INC.,

                Plaintiff,                         **MEMORANDUM AND ORDER**
                                                                             No. 02-CV-6205 (FB) (RML)

    -against-

GENERAC POWER SYSTEMS, INC.,
ALLEGHENY ENERGY SOLUTIONS, INC., and
ALLEGHENY ENERGY, INC.

                Defendants.
------------------------------------------------------------------x

*Appearances:*

| For the Plaintiff: | For Defendant Generac Power Systems, Inc.: |
|---|---|
| DANIEL MELUCCI | WILLIAM F. DAHILL |
| Melucci, Celauro & Sklar, LLP | Woolmuth Maher & Deutsch LLP |
| 1350 Broadway, Suite 1501 | 500 Fifth Avenue |
| New York, NY 10018 | New York, NY 10110 |
|  |  |
|  | ROD ROGAHN |
|  | Generac Power Systems, Inc. |
|  | P.O. Box 8 |
|  | Waukesha, WI 53187 |
|  |  |
|  | *For Defendants Allegheny Energy Services, Inc. and Allegheny Energy, Inc.:* |
|  | PAUL M. HELLEGERS |
|  | Menaker & Herrmann LLP |
|  | 10 East 40th Street |
|  | New York, NY 10016 |

**BLOCK, District Judge:**

This matter is before the Court on defendant Generac Power Systems' ("Generac") motion to dismiss plaintiff Utility Metal Research's ("UMR") amended complaint for failure to comply with the notice pleading requirements of Fed. R. Civ. P. 8(a) or state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). After answering the amended complaint, Defendants Allegheny Energy Services and Allegheny Energy (collectively, "Allegheny") joined, except in one respect, those aspects of the motion that pertained to them. For the reasons that follow, the Court grants the motion and dismisses the amended complaint.

I.

The Court's recitation of facts is derived from the amended complaint. Generac is a Wisconsin corporation that designs and manufactures a wide range of electrical generation equipment. Allegheny Energy Services and Allegheny Energy are, respectively, Delaware and Maryland corporations whose business includes the sale of electrical-generation equipment purchased from Generac and other manufacturers. UMR is a New York corporation that installs and maintains on-site electrical-generation equipment. UMR alleges that certain Generac power generators that four of its clients purchased from Allegheny did not function properly and, as a result, its clients refused payment for UMR's installation and maintenance services. UMR further alleges that defendants failed to honor their warranties with respect to the generators and that UMR incurred expenses in repairing them.

UMR commenced this action in New York Supreme Court, Richmond County, asserting various contract, warranty and products-liability claims against both Generac and Allegheny, as well as a claim of intentional interference with contracts against Generac. The action was removed on the basis of diversity jurisdiction. *See* 28 U.S.C. §§ 1332 and 1441.

UMR served its amended complaint in August 2003. The amended complaint simply repeated the conclusory allegations contained in the original complaint. In addition, it asserted a defamation claim against Generac. The allegedly defamatory statement is a letter from Generac to one of UMR's clients, Lee Springs, which UMR appended to its amended complaint. In the letter, Generac warns Lee Springs:

> We have reviewed the application and installation of the Generac generators at your site and have determined this application and installation to be inappropriate.
>
> Specifically, we are concerned about:
>
> A. The lack of fuel spill protection/containment in the generator area[;]
> B. Operation of bi-fuel conversions is not authorized or recommended on Generac Mitsubishi standard diesel engines[;]
> C. Exhaust systems appear to run into the central chimney of the building, this could be a potential fire hazard[;]
> D. No apparent pressure relief in remote radiator configuration[;]
> E. Inadequate fire suppression.
>
> For these concerns listed, we request that a certified engineering firm which is experienced with the application, design, construction and installation of standby generators and

>
> heat recovery systems be consulted and the appropriate measures be taken to address the concerns listed prior to continuing operation of these units.
>
> Accordingly, it is Generac's recommendation the generators be removed unless the application and installations are corrected to eliminate the listed concerns. We regret to make such a recommendation, but feel strongly that the application and installation must be corrected for the concerns stated.

Am. Compl. Ex. A.

## II.

The Court applies New York substantive law in addressing UMR's claims; in matters of procedure, however, federal law governs. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law.").

Under Rule 8(a), a plaintiff need provide nothing more than "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting Fed. R. Civ. P. 8(a)(2)). "Dismissal pursuant to the rule is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004) (describing the Rule 8 pleading standard as "extremely permissive"). Because the Court dismisses UMR's amended complaint under Rule 12(b)(6), it need not reach the question of whether the amended complaint meets the permissive requirements of Rule 8(a).

There is "a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted." *Wynder*, 360 F.3d at 80. Thus, even when a complaint is sufficient to meet Rule 8(a)'s notice requirements, a Rule 12(b)(6) motion will "lie to permit each particular defendant to eliminate those causes of action as to which no set of facts has been identified that support a claim against him." *Id.*; *see also Straker v. Metropolitan Transit Authority*, 333 F. Supp. 2d 91, 102 (E.D.N.Y. 2004) ("Conceptually, the Court believes that there is a distinction to be drawn between fair notice of what the plaintiff's claim is and the grounds upon which it rests; conclusory allegations cannot satisfy the latter." (internal quotation omitted)).

When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *See Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004). Courts may not consider matters outside the pleadings, but may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Because Allegheny answered the amended complaint before joining in Generac's motion, Allegheny's motion is properly designated as a motion for judgment on the pleadings under Rule 12(c). In considering a Rule 12(c) motion, "courts apply the same standard as that applicable to a motion under Rule 12(b)(6)." *Ziemba*, 366 F.3d at 163.

**III.**

5

**A. Breach-of-Contract Claims**

Under New York law, the essential elements of a contract claim are "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir.1998).

In a portion of its motion not joined by Allegheny, Generac argues that UMR has failed to plead sufficient facts to show the existence of a contract between Generac and UMR. UMR's amended complaint alleges that it "entered into a contract with the defendants" for installation of generators at its four clients' facilities. *See* Am. Compl. ¶¶ 28, 81, 134, 187. UMR did not attach a copy of the alleged contracts to its amended complaint, did not quote, paraphrase, or otherwise reference any terms of the alleged contracts, and did not identify the contract provisions allegedly breached. Dismissal under Rule 12(b)(6) is appropriate where a plaintiff fails to identify the contractual provision that defendant allegedly breached. *See Wolff v. Rare Medium Inc.*, 171 F. Supp. 2d 353, 358 (S.D.N.Y. 2001) (dismissing New York breach-of-contract claim because plaintiffs failed to identify contractual provisions that defendant had allegedly breached); *Leigh Management Assoc's v. Weinstein*, 674 N.Y.S.2d 688, 689 (1st Dep't 1998) (concluding complaint failed to state a viable cause of action where it did not set forth the terms of the parties' contracts or identify the contract terms on which the claim was based).[1]  Because UMR's amended

---

[1] As noted, the Court applies New York substantive and federal procedural law. The Court recognizes that *Leigh Management Assoc's* and other New York cases cited herein were decided on motions to dismiss for failure to state a cause of action under N.Y. C.P.L.R. 3211(a)(7), not under Rule 12(b)(6). This is, however, a distinction without a difference. Like under Rule 12(b)(6), under N.Y. C.P.L.R. 3211(a)(7) the pleading is

complaint does not identify the contractual provisions allegedly breached by Generac, it fails to state a breach-of-contract claim against Generac.

Although Allegheny did not join in this portion of Generac's motion, the amended complaint similarly fails to identify the contractual provisions allegedly breached by Allegheny. Regardless of whether or not Allegheny moved for dismissal on this particular ground, "the Court has the power to dismiss a complaint *sua sponte* for failure to state a claim." *Nunez v. Goord*, 172 F. Supp. 2d 417, 433 (S.D.N.Y. 2001) (citing *Leonhard v. United States*, 633 F.2d 599, 609 n. 11 (2d Cir.1980)). The party defending a *sua sponte* dismissal is ordinarily allowed an opportunity to be heard before issuance of the order. *See id.* (citing *Lewis v. New York*, 547 F.2d 4, 5-6 & n. 4 (2d Cir.1976)). Generac's motion to dismiss for failure to identify contract provisions that were allegedly breached provided UMR with notice of, and an opportunity to defend, this deficiency in its contract claims against all the defendants. *See id.* (*sua sponte* dismissing excessive force claim against three of the defendants without granting plaintiff an opportunity to be heard because, although the motion for summary judgment did not seek dismissal on the ground that the complaint

---

"afforded a liberal construction, its allegations are accepted as true, [and] plaintiffs are accorded the benefit of every possible favorable inference. . . ." *HT Capital Advisors, L.L.C. v. Optical Resources Group, Inc.*, 715 N.Y.S.2d 837, 838 (1st Dep't 2000). Similarly, like under Rule 12(b)(6), under N.Y. C.P.L.R. 3211(a)(7) "vague and conclusory allegations and expression of hope that discovery, if and when conducted, might provide some factual support for [a] cause of action . . . provide an insufficient basis for failing to dismiss a patently defective cause of action." *Id.*; see also *Straker,* 333 F. Supp. 2d at 102 (noting that notwithstanding the Supreme Court's decision in *Swierkiewicz*, conclusory allegations are still insufficient to survive a motion to dismiss for failure to state a claim upon which relief can be granted when the complaint fails to identify facts that support a claim).

failed to allege facts supporting such a claim against those particular defendants, the defendants' motion for summary judgment "against the complaint" gave plaintiff notice and an opportunity to defend his excessive force claim). Accordingly, the breach-of-contract against Allegheny is dismissed.

### B. Third-Party-Beneficiary, Partnership and Quasi-Contract Claims

In its reply memorandum of law, UMR asserts, for the first time, that it is the third party beneficiary of unspecified contracts between Allegheny and Generac, that Generac is Allegheny's partner and, therefore, liable for its actions, and that it is entitled to recovery against Generac on the theory of quasi-contract. As an initial matter, the Court notes that a complaint may not be amended by briefs. *See Fonte v. Board of Managers of ContinentalFonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988) ("Factual allegations contained in legal briefs or memoranda are . . . treated as matters outside the pleading for purposes of Rule 12(b)"); *O'Brien v. National Property Analysts Partners*, 719 F.Supp. 222, 229 (S.D.N.Y.1989) ("It is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss."). In addition, UMR's new arguments are without merit.

In order to state a claim under New York law that it was the third-party beneficiary of a contract between Generac and Allegheny, UMR must allege, *inter alia*, that they entered into a contract intended for UMR's direct benefit. *See Ogden Dev. Corp. v.*

8

*Federal Ins. Co.*, 508 F.2d 583, 588 (2d Cir. 1974) ("Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement, to which he is not a party, he must, at least show that it was intended for his direct benefit."). UMR has not alleged, even in a conclusory manner, any intent by Generac and Allegheny to directly benefit UMR by contract, let alone plead any facts in support of such a claim. Thus, UMR has not pleaded a third-party-beneficiary claim.

Similarly, UMR has failed to plead essential elements of its claim that Generac is Allegheny's partner and, therefore, is bound by its actions. In New York there are several indicia of the existence of a partnership relationship, namely: "(1) the pro-rata sharing of profits and losses of the enterprise, (2) the pro-rata contribution to the capital of the enterprise, (3) the joint ownership and interest in the enterprise's assets by all investors, (4) the intention of the parties that they be partners, and (5) the partners all having some voice in the management of the enterprise." *U.S. v. Bonanno Organized Crime Family*, 879 F.2d 20, 27-28 (2d Cir. 1989). UMR, having pleaded no facts in support of any of these indicia of partnership, has not stated a claim against Generac as Allegheny's partner.

With respect to the theory of quasi contract, UMR contends that Generac "would be unjustly enriched in having sold defective equipment, essentially to UMR, and avoiding liability for the failure of such equipment." [Pls.' Reply] Mem. at 7. "[T]o recover under a theory of quasi contract, a plaintiff must demonstrate that services were performed for the defendant resulting in its unjust enrichment. It is not enough that the defendant received a benefit from the activities of the plaintiff; if services were performed at the

9

behest of someone other than the defendant, the plaintiff must look to that person for recovery." *Kagan v. K-Tel Entertainment, Inc.*, 568 N.Y.S.2d 756, 757 (1st Dept. 1991); *see also Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 167 n. 64 (S.D.N.Y. 1998) (explaining that recovery in quasi-contract will not lie absent an allegation that performance was rendered for the defendant). Regardless of UMR's new assertion that Generac "essentially" sold it the generators, it is clear from the amended complaint that the generators were, in fact, purchased from Allegheny by UMR's clients. UMR has pleaded no facts that would show that its installation and maintenance of those generators was performed at Generac's behest. If UMR is entitled to any recovery for the its clients' alleged refusal to pay for its services, such recovery would be against its clients, not Generac. Similarly, any cause of action for alleged defects in the generators belongs to those clients, not UMR.

## C. Implied- and Express-Warranty Claims

Having failed to plead sufficient facts to support a contract claim against Generac or Allegheny, UMR cannot state an implied-warranty claim. *See Castillo v. Tyson*, 701 N.Y.S.2d 423, 425 (1st Dep't 2000) (affirming dismissal of implied warranty claim because there was no privity of contract between plaintiff and defendant).

UMR's express-warranty claim is equally defective. Under New York law, breach of an express warranty is proven by showing the existence of an express warranty, reliance on that warranty as part of the agreement between the parties, and that the warranty was false or misleading when made, proximately causing plaintiff's loss. *See*

10

*Rogath v. Siebenmann*, 129 F.3d 261, 264 (2d Cir. 1997). As a general rule, express warranties are "solely creatures of contract." *Mastrangelo v. Howmedica*, 903 F. Supp. 439, 443 (E.D.N.Y. 1995). However, New York courts recognize that privity of contract is not required to state a claim of breach of warranties contained in public advertising or sales literature. *See Chenango County Indus. Dev. Agency v. Lockwood Greene Eng'rs, Inc.*, 494 N.Y.S.2d 832, 834 (3rd Dep't 1985) ("the lack of privity is not fatal, for plaintiffs have alleged that [defendant] made specific representations in advertising and sales literature upon which plaintiffs relied."). UMR's amended complaint failed to identify any express warranty provisions allegedly breached by defendants or allege reliance on public advertising or sales literature.

### D.  Negligence and Strict-Products-Liability Claims

UMR's amended complaint asserts that "defendants failed to use reasonable care in designing or making" the generators, and that they "were certain to be dangerous and defective when put to normal use." Am. Compl. ¶¶ 114, 115. It is unclear from the amended complaint whether, by these assertions, UMR intended to allege a negligence or strict-products-liability claim. Regardless, under New York's so-called "economic-loss" doctrine, where a plaintiff seeks recovery under either a negligence or strict-products-liability theory for damage to a product, as opposed to physical damage to a person or property, the plaintiff may only recover contract damages. *See Bocre Leasing Corp. v. General Motors Corp.*, 84 N.Y.2d 685, 694 (1995) ("Tort recovery in strict products liability and negligence against a manufacturer should not be available to a down-stream purchaser where the claimed losses flow from damage to the property that is the subject of the

contract. . . . Tort law should not be bent so far out of its traditional progressive path and discipline by allowing tort lawsuits where the claims at issue are, fundamentally and in all relevant respects, essentially contractual, product-failure controversies.").

The amended complaint does not allege any damage to any person or property other than to the generators themselves. Thus, UMR has failed to state a negligence or strict-products-liability claim.

### E. Tortious Interference with Contract

As noted, UMR's claim of tortious interference with contract is asserted against Generac only. To establish a prima facie case of tortious interference with contractual relations under New York law, a plaintiff must plead the following elements: (1) the existence of a valid contract between the plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach the contract; (4) and damages. *See Kronos Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993).

The amended complaint makes vague reference to alleged contracts between UMR and its clients, but provides no factual allegations regarding the terms of those contracts, how they were breached, or how Generac procured a breach. *See Wolff*, 171 F.Supp. 2d at 360 (dismissing claim of tortious interference with contract that was unsupported by factual allegations regarding plaintiff's rights and obligations under the alleged contracts, how the third parties breached the contracts, or how defendants caused the breach). UMR alleges that Generac "intentionally and without justification induced one or more of [UMR's clients] to breach the contract with [UMR]." Am. Compl. ¶ 240. But

UMR offers no facts in support of this vague and conclusory allegation of intent. *See Fitzpatrick Constr. Corp. v. County of Suffolk*, 525 N.Y.S.2d 863, 866 (2d Dep't 1998) (affirming dismissal because complaint that "vaguely refers to an intentional course of conduct by [defendants]...[is] insufficient to withstand a motion to dismiss."). Accordingly, UMR has failed to state a claim of tortious interference with contract.

**F. Defamation Claim**

"Under New York law, the elements of a defamation claim are a false statement, published without privilege or authorization to a third party, constituting fault . . . and it must either cause special harm or constitute defamation per se." *Peters v. Baldwin Union Free School Dist.*, 320 F.3d 164, 169 (2d Cir. 2003) (quotation omitted). Whether a statement is susceptible to a defamatory meaning is a question of law. *See Aronson v. Wiersma*, 65 N.Y.2d 592, 593 (1985) ("Whether particular words are defamatory presents a legal question to be resolved by the court in the first instance . . . and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction.").

Generac argues that the letter merely states its concerns about the installation and, therefore, is a non-actionable expression of opinion. Expressions of subjective opinion, as opposed to statements of objective fact, cannot defame "unless a reasonable factfinder would conclude that the statement implies reasonably specific assertions of fact." *See Lee v. Bankers Trust Co.*, 166 F.3d 540, 547 (2d Cir. 1999). Although the letter is couched in terms

13

of Generac's "concerns" about the installation, those concerns are stated in language that is sufficiently verifiable to have a defamatory meaning.

Nonetheless, the Court need not reach the question of whether Generac's statements are susceptible to a defamatory meaning because they were privileged. "Good faith communications of a party having an interest in the subject, or a moral or societal duty to speak, are protected by a qualified privilege if made to a party having a corresponding interest or duty." *Boyd v. Nationwide Mut. Ins. Co.*, 208 F.3d 406, 409-20 (2d Cir. 2000). This qualified privilege may only be overcome by a showing of malice on the part of the defendant. *See Kaplan v. MacNamara*, 497 N.Y.S.2d 710, 711-12 (3rd Dept. 1986) ("Because the communications of which plaintiff now complains were in fact made by those who shared both a common interest and duty, they were indeed cloaked with a qualified privilege[,] which cast upon the plaintiff the burden of proving that defendants acted with actual malice." (internal citations omitted)). Under New York law, a manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known. . . [and also] has a duty to warn of the danger of unintended uses of a product provided those uses are reasonably foreseeable." *Burke v. Spartanics Ltd.*, 252 F.3d 131, 138 (2d Cir. 2001) (quotation omitted). Having inspected the generators at Lee Springs' facility, Generac became concerned about dangers related to their installation and use. As such, it had a duty to warn Lee Springs about its concerns. Lee Springs, as the user of the generators, had a clear interest in being warned of those concerns. Accordingly, the letter is protected by qualified privilege.

14

As noted, where a qualified privilege exists, plaintiff has the burden of proving actual malice. "Although the existence of malice is usually a question of fact, the issue is one for the jury only if the plaintiff provides evidence warranting such submission." *Kaplan*, 497 N.Y.S.2d at 712. Conclusory allegations are insufficient to show malice. *See Id.* UMR has made no allegations, not even conclusory ones, that the statements were made with malice.

## CONCLUSION

Defendants' motion to dismiss is granted. Because UMR has not requested leave to amend, and because it already had an opportunity to replead, the amended complaint is dismissed with prejudice. *See Faulkner v. Verizon Communications, Inc.*, 189 F. Supp. 2d 161, 174 (S.D.N.Y. 2002) (dismissing amended complaint with prejudice where plaintiffs had not requested leave to amend and had already been allowed an opportunity to replead).

**SO ORDERED.**

                                                    FREDERIC BLOCK
                                                    United States District Judge

Brooklyn, New York
November 18, 2004